# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| RHONDA HUGHS, NEXT FRIEND TO TSG; RANDY GROVES, T.S.G., MINOR, BY NEXT FRIEND RHONDA HUGHS;<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | Case No. 5:15-06079-CV-RK |

## ORDER

Now pending before the Court is Defendant's Motion for Partial Summary Judgment – Preemption. (Doc. 36.) In their supporting and opposing suggestions, the parties dispute whether certain claims asserted by Plaintiffs are preempted by federal law or otherwise fail as a matter of law. After careful review, the Defendant's motion (doc. 36) is **GRANTED** in part and **DENIED** in part.

### I.   Background

This action for wrongful death arises from an automobile/train collision that occurred at a public railroad grade crossing in Trenton, Missouri. The accident occurred when a car driven by Nancy Groves ("Decedent") collided with a train owned by Defendant. The resulting collision killed Decedent and her two passengers. Plaintiffs allege a number of ways in which Defendant was negligent. Defendant asserts that many of Plaintiffs' claims are preempted by federal law or fail for other reasons.

### II.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). An issue of fact is only genuine if it has a real basis in the record, and is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable

to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. FED. R. CIV. P. 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) ("mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment"). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Specifically, "[f]ederal preemption is an affirmative defense, and therefore the Defendant bears the burden of proof." *Janero v. Norfolk S. Ry. Co.*, No. 1:13-CV-155-TLS, 2017 U.S. Dist. LEXIS 36822, at *13 (N.D. Ind. Mar. 15, 2017) (discussing federal preemption with respect to the Federal Railroad Safety Act).

### III. Discussion

In its motion for summary judgment, Defendant raises the following preemption challenges to a number of Plaintiffs' claims: (A) federal law preempts Plaintiffs' claims that the train was traveling at an excessive speed; (B) federal law preempts Plaintiffs' claims related to the train's horn based on its sound, pattern and maintenance; and (C) federal law preempts Plaintiffs' claims for negligent training. Specifically, Defendant contends that the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq*, and the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq*, preempt these claims.

The purpose of the FRSA is to promote "safety in every area of railroad operations and reduce railroad-related accidents and incidents." *See* 49 U.S.C. § 20101. The FRSA has an express preemption and savings provision which states in relevant part:

(a) National uniformity of regulation.

> (1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), . . . prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order-
>
>> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>>
>> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>>
>> (C) does not unreasonably burden interstate commerce.

(b) Clarification regarding State law causes of action.

> (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party-
>
>> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), . . . covering the subject matter as provided in subsection (a) of this section;
>>
>> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>>
>> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106.

Pursuant to the LIA, a railroad carrier can use a locomotive only when the locomotive's "parts and appurtenances":

> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter [49 USCS §§ 20701 et seq.] and regulations prescribed by the Secretary of Transportation under this chapter [49 USCS §§ 20701 et seq.]; and

(3) can withstand every test prescribed by the Secretary under this chapter [49 USCS §§ 20701 et seq.].

49 U.S.C. § 20701. "The LIA regulates the design and construction of locomotives, and the Supreme Court has held that it preempts conflicting state laws concerning locomotive equipment." *Bates v. Mo. & N. Ark. R.R. Co.*, 548 F.3d 634, 638 (8th Cir. 2008) (citing *Napier v. Atlantic Coast Line R.R. Co.*, 272 U.S. 605, 613 (1926)).

### A. Excessive Speed Claims

Defendant first argues that Plaintiffs' claims that the train was operating at an excessive speed are preempted by federal law because the train was traveling within the speed limit set by federal law. Here, the parties' briefs address four different bases for the excessive speed claims. The parties do not dispute that the train was traveling within the speed limit set by federal law.

"Federal law generally preempts state law claims based on excessive speed in train accidents. In order to avoid preemption a plaintiff must show that [his or her] claim is an exception to the general rule." *Rawls v. Union Pac. R.R.*, No. 1:09-cv-01037, 2011 U.S. Dist. LEXIS 77253, at *8 (W.D. Ark. Feb. 22, 2011). The FRSA has established regulations setting the maximum train speeds for different classes of track. 49 C.F.R. § 213.9. Generally, "if the train was traveling within the federal speed limit, then the FRSA preempts any state or common law claim as to excessive speed." *Peters v. Union Pac. R.R. Co.*, 455 F. Supp. 2d 998, 1002 (W.D. Mo. 2006) (citing *CSX Transp. v. Easterwood*, 507 U.S. 658, 675 (1993)). An exception to such preemption is a claim for failure to slow or stop to avoid a specific individual hazard. *Id.* at 1002 (collecting cases). "Generally, courts considering this issue have ruled that a 'specific individual hazard' must be a discrete and truly local hazard[.]" *O'Bannon v. Union Pac. R.R.*, 960 F. Supp. 1411, 1420 (W.D. Mo. 1997). The local hazards "must be aberrations which the Secretary could not have practically considered when determining train speed limits under the FRSA." *Id.* at 1420 (citation omitted). More precisely stated, "the 'local hazard' cannot be statewide in character and cannot be capable of being adequately encompassed within uniform, national standards." *Id.* at 1420-21 (citations omitted).

### 1. Unwavering Approach

As one basis for an excessive speed claim, Plaintiffs argue that Defendant operated the train at an excessive speed for local hazards including the unwavering approach of Decedent's car. Plaintiffs' claim that Defendant operated the train at an excessive speed given this known, specific individual hazard – the car's unwavering approach – is not preempted by the FRSA.

4

*Peters*, 455 F. Supp. 2d at 1003 (holding unwavering approach by a vehicle constitutes a local safety hazard therefore plaintiff's excessive speed claim was not preempted by the FRSA); *see also Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 242 (Mo. banc 2001) (*overruled on other grounds*) ("A specific, individual hazard can include the 'unwavering approach' of a vehicle that the train crew either knew or should have known about.") (citing *Griffin v. Kansas City Southern Ry. Co.*, 965 S.W.2d 458, 461 (Mo. App. 1998)). Defendant concedes in its reply suggestions that this claim is not preempted, but maintains that it is more properly characterized as a claim that the crew should have taken evasive action rather than a claim that the train was traveling too fast. The Court will not address the merits of this claim here as they are addressed in its Order on Defendant's other motion for summary judgment (doc. 38). Therefore, Defendant's motion for summary judgment on Plaintiffs' excessive speed claim on the basis of the car's unwavering approach is denied.

### 2. Sight Restrictions, Excessive Vertical Elevation, Inadequate Traffic Control at the Crossing

As another basis of excessive speed, Plaintiffs argue that sight restrictions, excessive vertical elevation, and inadequate traffic control at the crossing made the crossing extrahazardous. Plaintiffs argue that such an extrahazardous crossing is a local hazard, and therefore, this excessive speed claim is not preempted by the FRSA. However, these were the same type of claims that were found to be preempted in *O'Bannon*. There, the plaintiffs alleged that a local hazard existed due to "lack of active warning devices at the crossing, the steep grade and angle of the crossing, and the proximity of the crossing to a highway." *O'Bannon*, 960 F. Supp. at 1421. The Court determined that those allegations did not establish an individualized hazard. *Id.* It said they were all "general conditions of crossings that are amenable to uniform, nation standards." *Id.* As in *O'Bannon*, Plaintiffs' excessive speed claim based on the alleged extrahazardous crossing is preempted by the FRSA, and summary judgment for Defendant on this claim is appropriate.

### 3. Extreme Weather Conditions

Next, Plaintiffs argue that weather conditions the day of the collision were a specific, individualized hazard, citing to *Bakhuyzen v. Nat'l Rail Passenger Corp.*, 20 F. Supp. 2d 1113, 1118 (W.D. Mich. 1996), which held that the question of whether a train engineer "had a duty to slow the train due to snowy weather conditions is not preempted by the FRSA." However, the Court agrees with Defendant that the clear majority of courts have come to the opposite

5

conclusion and rejected the argument that weather conditions are an exception to FRSA preemption of excessive speed claims. *Kankakee, Beaverville & S. R.R. Co. v. McLane Co.*, No. 4:08-cv-00048, 2010 U.S. Dist. LEXIS 94675, at *9 (N.D. Ind. Sep. 10, 2010) ("Most courts examining the issue have held that adverse weather conditions do not constitute a specific, individual hazard.") (collecting cases). Additionally, the Court finds that this case is distinguishable from *Bakhuyzen* because there, the plaintiff argued that the train had to operate at a slower speed because of "limited visibility due to snowy weather conditions." 20 F. Supp. 2d at 1117. Whereas here, the evidence shows that snow was not impairing visibility at the time of the accident. Therefore, Plaintiffs' excessive speed claim based on extreme weather conditions is preempted by the FRSA, and summary judgment for Defendant on this claim is appropriate.

### 4. Failing to issue a slow order

Finally, Defendant argues that if Plaintiffs attempt to circumvent federal preemption by re-characterizing their speed claim as a failure to issue a slow order claim, that claim is preempted in the same way as a direct attack on the speed of the train. Plaintiffs do not oppose this specific argument. In *Rawls v. Union Pacific Railroad*, the court reiterated that "federal regulations, which specify speed limits for different types of tracks and trains, are not affected by internal railroad policies." No. 1:09-cv-01037, 2011 U.S. Dist. LEXIS 77253, at *10 (W.D. Ark. Feb. 22, 2011) (citing *St. Louis Sw. Ry. Co. v. Pierce*, 68 F.3d 276, 278 (8th Cir. 1995) (collecting cases)). Therefore, Plaintiffs' excessive speed claim based on a failure to issue a slow order is preempted by the FRSA and summary judgment for Defendant is appropriate.

### B. Train Horn Claims

Defendant next argues that federal law preempts Plaintiffs' claims related to sound, pattern, and maintenance of the train's horn. Here, Plaintiffs press three separate arguments as to how the sound of the train's horn constituted negligence. Plaintiffs argue that (1) Defendant's horn did not meet the decibel level requirement set forth in 49 C.F.R. § 229.129 at the time of the collision; (2) relatedly, Plaintiffs argue Defendant failed to maintain the horn in compliance with the LIA by failing to comply with 49 C.F.R. § 229.129; and (3) Plaintiffs argue that, prior to the collision, the train's horn was not sounded according to the correct pattern as required by 49 C.F.R. § 222.21.

### 1. Decibel Level Requirements of 49 C.F.R. § 229.129 and Locomotive Maintenance Claims

The parties address two sets of arguments related to 49 C.F.R. § 229.129. First, the parties dispute whether there are sufficient facts for a jury to determine that Defendant violated the decibel requirements of 49 C.F.R. § 229.129 at the time of the collision. Second, the parties' dispute regarding whether Plaintiffs' negligent maintenance claim is preempted by the LIA, stems from a factual disagreement regarding whether Plaintiffs can prove Defendant violated a federal standard of care set forth in section 229.129.

Additional authority from the parties is necessary for the Court's resolution of these claims. Specifically, the Court asks the parties to address the following issues: (1) any distinction between these claims or whether both arguments are solely based on negligent maintenance; (2) whether these claims are preempted by the FRSA, the LIA, or both; and (3) whether state law claims asserting a breach of a federal standard of care are preempted by the LIA. *See BNSF Ry. Co. v. Seats, Inc.*, No. 4:16CV3121, 2017 U.S. Dist. LEXIS 8921 (D. Neb. Jan. 23, 2017) (analyzing conflict among cases regarding whether state claims based on a federal standard of care are preempted by the LIA).[1] The Court will seek input from counsel at the pre-trial conference on April 14, 2017, to determine how this information should be provided to the Court.

### 2. Train Horn Pattern Requirements of 49 C.F.R. § 222.21

Federal regulations require train horns to be sounded in the following pattern when approaching a public highway-rail grade crossing: "two long blasts, one short blast and one long blast[.]" 49 C.F.R. § 222.21. Further, "the locomotive horn shall begin to be sounded at least 15 seconds, but no more than 20 seconds, before the locomotive enters the crossing." *Id.* However, an engineer does not violate the regulation by beginning to sound the horn 25 seconds before the train enters the crossing if the engineer is unable to determine precisely the time of arrival. *Id.* "Thus, the regulation requires four horn blasts to be sounded in a pattern of a long, long, short,

---

[1] Neither party addressed this conflict in their suggestions. *See* Defendant's motion for summary judgment (doc. 37 at 17) ("The regulations governing locomotive equipment are promulgated pursuant to the [LIA]. . . . To avoid preemption, Plaintiffs must allege and prove that the railroad 'has failed to comply with the [f]ederal standard of care established by a regulation.'") (citing FRSA at 49 U.S.C. § 20106(b)(1)(B)); Plaintiffs' suggestions in opposition (doc. 64 at 14) citing the preemption analysis under the FRSA asking whether the defendant violated a federal standard of care and (*id.* at 19) arguing Plaintiffs' claims are not preempted because Defendant has failed to comply with the federal standard of care established in 49 C.F.R. Part 229.

then long blast that starts no more than 25 seconds before a train enters a public crossing." *Johns v. CSX Transp., Inc.,* No. 1:14-CV-125 (LJA), 2016 U.S. Dist. LEXIS 133039, at *44 (M.D. Ga. Sep. 28, 2016). These regulations governing locomotive horns specifically preempt "any State law, rule, or regulation, or order governing the sounding of the locomotive horn at a public highway-rail grade crossing in accordance with 49 U.S.C. § 20106." 49 C.F.R. § 222.7(a). However as noted above, the FRSA and its regulations "do not preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party has failed to comply with the Federal standard of care established by a regulation[.]" 49 U.S.C. § 20106.

Here, Plaintiffs claim that prior to the collision, the train's horn was not sounded in accordance with the pattern set forth in 49 C.F.R. § 222.21. The Court finds that based on the testimony of Plaintiffs' expert Jim Scott (doc. 63-4 at 90) and the testimony of Defendant's expert Gary Wolf (doc. 63-18 at 46-48), the horn was not sounded in the correct pattern, and therefore, Defendant breached its duty to comply with the pattern set forth in 49 C.F.R. § 222.21. However, this does not end the Court's inquiry.

Defendant's argument not only raises the issue of preemption but also focuses on Plaintiffs' lack of evidence establishing that the incorrect horn pattern was the proximate cause of the accident. Plaintiffs respond that causation is a question of fact for the jury. Additionally, Plaintiffs argue that Missouri law recognizes a legal presumption that, had the horn been sounded, the driver would have stopped. However, here is there is no dispute that the horn was sounded, and therefore a legal presumption on that basis is irrelevant. Moreover, Plaintiffs have not set forth any evidence establishing causation, and Plaintiffs acknowledge that the horn began sounding 8 blasts, 17 seconds prior to the collision. (Doc. 63 at ¶¶ 11, 28.)

The Court finds it illogical to conclude that a minor deviation from the regulation's pattern caused the collision considering Decedent appeared not to hear any of the horn's 8 blasts in the 17 seconds preceding the collision. Therefore, a finding by the jury of causation for Plaintiffs on this claim would be based on mere speculation. *See Stonebarger v. Union Pac. R.R. Co.*, 76 F. Supp. 3d 1228, 1246-47 (D. Kan. 2015) ("Because Plaintiffs have failed to come forward with any evidence that the short horn was the cause in fact or proximate cause of the accident, summary judgment is warranted."); *Byrne v. CSX Transp., Inc.*, No. 3:09 CV 919, 2012 U.S. Dist. LEXIS 75409, at *7-8 (N.D. Ohio May 31, 2012) ("Even if Plaintiffs could

8

demonstrate that Defendants did not comply with 49 C.F.R. § 222.21, Plaintiffs cannot prove causation. . . . The suggested inference . . . that Defendants' horn pattern caused the accident because [Plaintiff] did not stop and look for a train . . . is not sufficient to prove causation.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of a scintilla of evidence does not merit the submission of a case to a jury.")); and *Halloway v. Bnsf Ry. Co., No.* CV 10-0844 JCH/KBM, 2012 WL 12862335, at *5 (D.N.M. Sept. 4, 2012) ("the Court finds it illogical . . . to conclude that the use of a short signal . . . would have gained Ms. Williams' attention considering that Ms. Williams appeared not to hear a continuous 17-second blast even as the train was upon her. Further, any finding that the lack of additional warning caused Ms. Williams death, would be speculation on the part of the jury.") (citing *Petre v. Norfolk S. Ry. Co.*, 458 F.Supp.2d 518, 535 (N.D. Ohio 2006) ("[i]t is illogical to conclude that the 3-second delay in sounding the whistle prejudiced [the decedent's] ability to hear the whistle (when it would have been much further from the crossing), since she did not appear to hear the whistle when the train was upon her.")). Therefore, Plaintiff has not met its burden in resisting summary judgment on their train horn claim related to pattern, and summary judgment for Defendant on this claim is appropriate.

### C. Negligent Training Claims

Defendant next argues that Plaintiffs' negligent training claims are preempted by federal law. Specifically, Defendant claims that the regulations found in 49 C.F.R. Parts 240 and 217 subsume the subject of training and preclude the imposition of any common law duties that would impose additional requirements for training of engineers and conductors. Defendant also claims that 49 C.F.R. §§ 213.7 and 213.119 subsume the subject of training and preempt any common-law negligence theories addressing the same subject.

In opposition, Plaintiffs first argue that their negligent training claims arise from Defendant's failure to adhere to internal rules that were created pursuant to federal regulations, and that therefore their claims survive preemption pursuant to 19 U.S.C. § 20106.[2] Despite

---

[2] Although no statute or regulation is identified in the Complaint with respect to training, in their opposition, Plaintiffs baldly state Defendant "has a federally-imposed duty to instruct its train crews about safe operating procedures and practices, and to conduct an annual review and analysis of the effectiveness of its training and compliance programs" citing the following regulations: 49 C.F.R. §§ 240.127(b), 240.129(b), and 240.309. Section 240.127(b) requires a railroad to have "procedures for examining the performance skills of a person being evaluated for qualification as a locomotive engineer[.]" Section 240.129(b) requires a railroad to have "procedures for monitoring the operational performance of those it

Plaintiffs' numerous arguments regarding what the evidence shows,[3] Plaintiffs have ultimately not shown that any identified internal policies were created pursuant to federal regulations. Consequently, based on this argument, Plaintiffs' claims for negligent training do not withstand summary judgment.

Alternatively, Plaintiffs argue that the regulations cited by Defendant do not cover the subject matter of Plaintiffs' negligent training claims because the claims focus on training related to the safe grade crossings. "To prevail on the claim that the regulations have pre-emptive effect, [Defendant] must establish more than that they 'touch upon' or 'relate to' that subject matter." *Easterwood*, 507 U.S. at 664. "[R]egulations adopted pursuant to the FRSA will preempt a particular state law tort claim only if they 'substantially subsume' the subject matter of the relevant state law." *In re Derailment Cases*, 416 F.3d 787, 793 (8th Cir. 2005) (citing *Easterwood*, 507 U.S. at 664). "But a regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter." *Id.* at 794 (citing *CSX Transp. v. Williams*, 365 U.S. App. D.C. 331, 406 F.3d 667, 672 (D.C. Cir. 2005) ("The FRSA preemption provision . . . authorizes the court only to determine whether the regulation covers the subject matter, leaving it to [the federal agency] to gauge the efficacy of the . . . measures based on the agency's expertise.")). Because Plaintiffs assert that Defendant negligently trained employees regarding safe grade crossings, the Court looks to the extent to

---

has determined as qualified as a locomotive engineer[.]" Finally, section 240.309 requires railroads to conduct "a formal annual review and analysis concerning the administration of its program for responding to detected instances of poor safety conduct by certified locomotive engineers during the prior calendar year" and "determine what action(s) it will take to improve the safety of train operations to reduce or eliminate future incidents of that nature." Plaintiffs have not submitted evidence showing that Defendant failed to perform or lacked such procedures.

[3] Plaintiffs argue that the evidence shows: (1) Defendant's safety rules obligated the train crew to "report, correct, or protect any unsafe condition or practice[;]" (2) unsafe conditions existed at the crossing prior to the collision; (3) Defendant's safety rules require that employees be "trained and be conversant with applicable policies and procedures related to their duties and be governed by them[;]" and (4) Mr. Shrum, the train's engineer, and Mr. Taft, the train's conductor, never reported the dangerous conditions at the crossing. Plaintiffs also assert that the evidence shows: (1) Defendant's "maintenance of way" employees are supposed to inspect the track and the crossing to determine if there are hazardous conditions; (2) this responsibility includes inspecting the signage to ensure it is in place and in good condition; (3) a damaged crossbuck (a type of railroad crossing sign) existed at the time of the collision; (4) maintenance of way employees are also responsible for controlling vegetation so that it does not obstruct the view at grade crossings, signals, and signs; (5) Defendant had an internal guideline requiring vegetation clearance a distance from 300 feet from crossing and 50 feet from the tracks' centerline; and (6) maintenance of way employees are responsible for maintaining vegetation in accordance with that internal policy.

which the regulations adopted pursuant to the FRSA address training of employees with respect to safe grade crossings.

Defendant claims that because the regulations found in 49 C.F.R. Parts 240 and 217 cover the subject of training engineers and conductors and 49 C.F.R. §§ 213.7 and 213.119 cover the subject of training track inspectors, these regulations preclude the imposition of any common law duties that would impose additional training requirements on Defendant's employees.

Plaintiffs contend that the regulations do not substantially subsume the subject matter of their negligent training claims because the regulations do not cover training related to the safe grade crossings. In support of their argument, Plaintiffs cite the Georgia Supreme Court case *Norfolk S. Ry. v. Zeagler*, where the court found that a plaintiff's failure to train claim was not preempted by certain regulations in 49 C.F.R. Part 217 because those regulations do not cover safety training for conductors regarding grade-crossing accidents. 748 S.E.2d 846, 860 (Ga. 2013) ("The regulations that Norfolk Southern cites, however, do not cover the subject matter of Zeagler's claim, much less conflict with that claim, because none of them speak to the kind of employee safety training, if any, that railroads should provide to their conductors to guard against injuries in grade-crossing accidents.").

Defendant does not address this case in its reply brief, however, the Court finds that it is inconsistent with holdings of federal courts that have determined state law claims regarding employee training are preempted by Federal Railroad Administration ("FRA") regulations. *See Bradford v. Union Pac. R.R.Co.*, 491 F. Supp. 2d 831, 839 (W.D. Ark. 2007) ("Plaintiffs' claims regarding engineer training and certification are [] preempted.") (citing 49 C.F.R. § 240); *Marsh v. Norfolk S., Inc.*, No. 3:14-CV-02331, 2017 U.S. Dist. LEXIS 39442, at *30 (M.D. Pa. Mar. 20, 2017) ("[i]t is clear that the federal training regulations do 'substantially subsume' the subject of employee training") (citing *Union Pac. R. Co. v. California Pub. Utilities Comm'n*, 346 F.3d 851, 868 (9th Cir. 2003)); *Dowe v. AMTRAK*, No. 01 C 5808, 2004 U.S. Dist. LEXIS 7233, at *18-19 (N.D. Ill. Apr. 26, 2004) ("The FRA's regulations contain detailed and particularized requirements that railroads must meet regarding the overall structure of their training programs. . . .[F]ederal law preempts state law regarding training of locomotive engineers[.]"); *Lombardy v. Norfolk S. Ry.*, No. 1:12-CV-210, 2014 U.S. Dist. LEXIS 75244, at *23 (N.D. Ind. June 3, 2014) ("Plaintiff's claims for negligent training . . . are precluded by the FRSA."); *Olberding v. Union Pac. R.R. Co.*, 454 F. Supp. 2d 884, 887 (W.D. Mo. 2006) (finding training and instruction of the

11

train crew claim "completely preempted by the FRA regulations[.]"; *Gillenwater v. Burlington N. & Santa Fe Ry.*, No. 4:05CV2011 RWS, 2006 U.S. Dist. LEXIS 41048, at *4 (E.D. Mo. June 13, 2006) (finding negligence claim based on railroad employee safety training preempted). Therefore, Plaintiffs' arguments as to why their claims for negligent training survive preemption are unavailing, and the Court finds that these claims are preempted. Consequently, summary judgment for Defendant is appropriate on Plaintiffs' negligent training claims.

## IV. Conclusion

As set forth above, the Court concludes that Defendant's motion (doc. 36) is **GRANTED** in part and **DENIED** in part. The Court finds summary judgment in favor of Defendant on Plaintiffs' excessive speed claims based on the alleged extrahazardous crossing, extreme weather conditions, and a failure to issue a slow order; on Plaintiffs' negligence claim related to the train horn pattern requirement; and on Plaintiffs' negligent training claims. Plaintiffs' excessive speed claim based on the car's unwavering approach withstands Defendant's preemption challenge. Additionally, the Court **DEFERS** ruling on Defendant's arguments related to 49 C.F.R. § 229.129.

    **IT IS SO ORDERED.**

        s/ Roseann A. Ketchmark
        ROSEANN A. KETCHMARK, JUDGE
        UNITED STATES DISTRICT COURT

DATED: April 14, 2017