IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| RHONDA HUGHS, NEXT FRIEND TO TSG; RANDY GROVES, T.S.G., MINOR, BY NEXT FRIEND RHONDA HUGHS; | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 5:15-06079-CV-RK |
| v. | ) ) ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER**

Now pending before the Court is Defendant's Motion for Partial Summary Judgment. (Doc. 38.) After careful review, Defendant's motion (doc. 38) is **GRANTED** in part and **DENIED** in part.

**I.      Background**

This action for wrongful death arises from an automobile/train collision that occurred at a public railroad grade crossing in Trenton, Missouri. The accident occurred when a car driven by Nancy Groves ("Decedent") collided with a train owned by Defendant. The resulting collision killed Ms. Groves and her two passengers. Plaintiffs allege a number of ways in which Defendant was negligent. Defendant moves for summary judgment on a number of Plaintiffs' claims.

**II.     Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). An issue of fact is only genuine if it has a real basis in the record, and is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable

inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. FED. R. CIV. P. 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) ("mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment"). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Discussion

Defendant moves for summary judgment on the following grounds: (A) Plaintiffs' claims that Defendant was negligent in failing to close and to maintain the crossing fail as a matter of law; (B) Plaintiffs' negligent training claims fail as a matter of law; (C) Plaintiffs' claims of negligent management fail to state a claim and are factually unsupported; (D) Plaintiffs' claims that the crew failed to keep a proper lookout and to slacken speed fail as a matter of law; (E) Plaintiffs' claim that the crossing is ultra-hazardous fails for lack of evidence to support it; (F) Plaintiffs' negligence per se claims fail as a matter of law; (G) Plaintiffs' claims for damages for pre-death pain and suffering are unsupported by any evidence; and (H) Plaintiffs can present no evidence of conduct by Defendant to support a claim for punitive damages.

### A. Negligent in Failing to Close the Crossing (doc. 1 at ¶ 19(p)) and Maintenance of the Crossing (*id.* at ¶¶ 19(a), (b), (c), (m))

Defendant moves for summary judgment on Plaintiffs' claim that Defendant was negligent in failing to close the crossing until all dangerous conditions were remedied and on Plaintiffs' claims that Defendant was negligent for failing to maintain that crossing.

First, Defendant argues that it had no duty to close the crossing because Missouri's Highways and Transportation Commission ("MHTC") had the exclusive power to close railroad crossings as provided in Missouri Revised Statute § 389.610. Next, Defendant argues it had no duty to maintain the approaches and crossing surfaces because under the regulations

implemented by MHTC, the roadway authority (and not the railroad) is responsible for the approaches, including the grade, profile, and composition of the approaches. Finally, with respect to signage, Defendant asserts, without citation to law or fact, that Plaintiffs cannot present facts showing the inadequacy of signage or causation related to such inadequate signage.

Plaintiffs counter by arguing that the "exclusive power" provision in section 389.610 has been interpreted by the Missouri Supreme Court to supplement, rather than repeal any existing law placing duties on the railroad. Plaintiffs cite *Alcorn v. Union Pacific Railroad Company*, 50 S.W. 3d 226, 235 (Mo. 2001) (overruled on other grounds) which states:

> Nothing in the statute negates the railroad's common law duty to use reasonable care in providing adequate warning of railroad crossings. In fact, section 389.610.2 sets forth the duty by requiring the railroad to "construct and maintain good and sufficient crossings." While the statute provides a regulatory mechanism for ordering the upgrading of crossings, it does not supercede the railroad's common law duty.

Additionally, Plaintiffs contend that Missouri has a long-standing common law duty requiring a railroad to construct and maintain its crossing and approaches in a reasonable manner. To support that contention, Plaintiffs cite *Hartmann v. St. Louis-S.F. Ry. Co.*, which states, "[i]t is well settled that when a railroad crosses a public road, there is a duty upon the railroad company, not only to construct the crossing in accordance with the provisions of Section 389.610 . . . , but also to maintain it in a condition that makes it reasonably safe for travel." 280 S.W.2d 442, 446 (Mo. App. 1955).

Based on the cases cited by Plaintiffs, the Court finds that Defendant had a duty to use reasonable care in providing adequate warning of the crossing and that it had a duty to maintain that crossing. These duties are not displaced by Section 389.610. Therefore, Defendant's arguments that it had no such duties with respect to Plaintiffs' claims for failure to maintain the crossing fail. Moreover, "the question of whether an injury in fact was caused by negligence is for the jury." *Alcorn*, 50 S.W.3d at 239. The Court simply determines "whether there are sufficient facts to show that an injury is 'the natural and probable consequence of the defendant's negligence' in order to make a submissible case." *Id.*

The Court does, however, agree with Defendant that it had no duty to close the crossing. Plaintiffs cite no authority for the proposition that Defendant's common law duty to use reasonable care to maintain its crossing rises to the level of a duty to close the crossing. Consequently, summary judgment for Defendant on Plaintiffs' claim that Defendant was

3

negligent in failing to close the crossing is appropriate. Plaintiffs' negligence claims for failure to maintain the crossing, by contrast, withstand summary judgment.

> **B.  Negligent Training, Managing, and Supervising Claims (doc. at ¶¶ 19(e), (h)-(l), (q)-(v))**

Defendant moves for summary judgment arguing that Plaintiffs' claims that the Defendant failed to properly train, manage, and supervise its employees fail as a matter of law because Missouri law does not permit such claims where a defendant has conceded respondeat superior liability for the acts or omissions of its employees and alternatively, because these claims are factually unsupported.

To begin, Plaintiffs' negligent training claims (doc. 1 at ¶¶ 19(h), (s), and (t)) and horn claim (*id.* at ¶ 19(r)) will not be discussed here as they are addressed in this Court's Order regarding Defendant's other motion for summary judgment (doc. 36). Additionally, the Court addresses some of Plaintiffs' negligent management claims (doc. 1 at ¶ 19(j), (k), and (l)) below in Part III.C and Plaintiffs' claim for failure to keep a proper lookout (*id.* at ¶19(q)) in Part III.D. The remaining negligence claims for failure to properly train, manage, and supervise identified by Defendant with respect to this argument are the following paragraphs of the Complaint: 19(e), (i), (u), and (v).

Generally, under Missouri law, "once an employer has admitted respondeat superior liability for [an employee's] negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." *State ex rel. McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995); *see also Hoch v. John Christner Trucking, Inc.,* No. 05-0762-CV-W-FJG, 2005 U.S. Dist. LEXIS 44791, at *3 (W.D. Mo. Oct. 18, 2005). In *McHaffie*, the Missouri Supreme Court recognized that there may be exceptions to this general rule, for example where an employer may be liable for punitive damages. *Id.* at 826; *see also Kwiatkowski v. Teton Transp., Inc.*, No. 11-1302-CV-W-ODS, 2012 U.S. Dist. LEXIS 56478, at *10 (W.D. Mo. Apr. 23, 2012) ("employers would be insulated from liability for their egregious conduct if the punitive damages exception to *McHaffie* was not recognized").

Defendant argues that because it has conceded respondeat superior liability, it should be granted summary judgment on Plaintiffs' claims for negligent training, managing, and

supervising.[1]  Plaintiffs argue that they have not yet made an election of which theory they intend to submit at trial and that they are entitled to proceed on their claims under the punitive damages exception.

In *Hoch*, this Court rejected an identical argument regarding the election of theory closer to trial reiterating that "once defendant admits vicarious liability for actions of its employee/agent, negligent hiring/training/entrustment claims serve no real purpose." 2005 U.S. Dist. LEXIS 44791, at *6 (citations and quotations omitted).  Based on *Hoch*, the Court finds that Plaintiffs' argument that it has not yet made an election of which theory it will submit to the jury is unavailing.  Additionally, the Court agrees with Defendant that Plaintiffs' punitive damages claims do not relate to training, managing, and supervising.  Consequently, summary judgment for Defendant on Plaintiffs' claims that Defendant failed to properly train, manage, and supervise its employees is appropriate.

### C. Negligent Management (doc. 1 at ¶¶ 19(j), (k), and (l))

Defendant moves for summary judgment on Plaintiffs' claims of negligent management arguing that they fail to state a claim and are factually unsupported.  Plaintiffs' opposition does not address Defendant's arguments with respect to these claims, and therefore, Plaintiffs are deemed to have abandoned these claims.  Consequently, summary judgment for Defendant on Plaintiffs' negligent management claims is appropriate.

### D. Crew Failed to Keep a Proper Lookout and Slacken Speed (doc. 1 at ¶ 19(q))

Defendant moves for summary judgment on Plaintiffs' claim that the train crew failed to keep a proper lookout on the basis that there is no evidence that the crew's failure to keep a proper lookout caused or contributed to the accident.  Specifically, Defendant argues that to show causation for a failure to keep a proper lookout, Plaintiffs must present evidence that the crew had the ability to take evasive action once they knew or should have known a collision was imminent.  In counter, Plaintiffs cite *Griffin v. Kansas City Southern Ry. Co*., 965 S.W.2d 458, 463 (1998) to argue that they need only show "that the crew had sufficient time and distance to take 'effective action' to avoid the collision" and that a jury can "take into account more than mere ability to stop the train."

---

[1] The Court notes that on the face of the Complaint, Plaintiffs have not pled direct negligence on the part of the employees and have only pled claims related to imputed liability. However, Defendant's arguments address the claims as if they state direct liability and imputed liability claims. Therefore, the Court finds that Defendant concedes that Plaintiffs have stated claims under both theories of liability.

5

Here, Plaintiffs cite the following evidence to support their claim that Defendant's failure to keep a proper lookout caused the collision: Decedent's car was making an unwavering approach; no witnesses heard a horn; Plaintiffs' expert opines that varying sounds call attention to themselves; in the final 5 to 6 seconds prior to impact, the engineer blew the horn in a continuous and virtually uninterrupted pattern. For the following reasons, this evidence is insufficient to withstand summary judgment. First, Plaintiffs do not set forth facts showing that Defendant could have activated emergency brakes earlier to avoid the collision with Decedent's car that was making an unwavering approach. Next, the fact that no witnesses heard a horn is irrelevant considering the admission that the engineer blew the horn. Additionally, Plaintiffs' horn claim related to varying sounds fails as to causation for the reasons stated in this Court's Order on Defendant's other summary judgment motion (doc. 36).

Plaintiffs have not met their burden to put forth evidence, under either standard, of any "effective action" that the crew could have taken to avoid the collision. Consequently, summary judgment for Defendant on any claim for failure to keep a proper lookout and to slacken speed is appropriate.

### E. Crossing is Ultra-Hazardous (doc. 1 at ¶ 19(m))

Defendant moves for summary judgment on Plaintiffs' claim that Defendant failed to properly mark the crossing and/or install active safety devices based on its ultra-hazardous nature.

"Generally, a crossing is extrahazardous when the circumstances are such that a railroad can reasonably anticipate that a person exercising ordinary care would nevertheless be subjected to the likelihood of injury." *Lohmann by & Through Lohmann v. Norfolk & W. Ry.*, 948 S.W.2d 659, 667 (Mo. Ct. App. 1997). As explained in *Koehler v. Burlington N., Inc.*, 573 S.W.2d 938, 943 (Mo. Ct. App. 1978), "[w]here the particular crossing is more hazardous than ordinary because it is heavily travelled or its terrain is such that motorists' line of sight down the track is obstructed, it is a jury question whether the railroad has met its duty of due care to give adequate warning of the approach of its trains." In *Koehler*, based on facts that witnesses claimed a crossing was extrahazardous, the crossing had heavy traffic, "weeds and brush were allowed to grow so high and so close to the tracks that motorists were required to pull up almost onto the tracks before they could see an oncoming train[,]" the court determined that "there was a jury

question whether defendant's warning . . . was adequate . . . to warn plaintiffs of the approaching train." *Id.* at 944.

Here, Plaintiffs have not put forth sufficient evidence to show that the crossing was extrahazardous based on *Koehler*. Specifically, Plaintiffs' expert testified that there was low traffic volume, no safety concern due to signage, and that the crossing grade was not itself dangerous. (Doc. 39-6 at 92-93, 160, and 241-242.) Additionally, while there was testimony of limited sight-lines due to vegetation, Plaintiffs' expert testified that (a) there would have been nothing in between Decedent and the train when Decedent was 100 feet from the crossing and that (b) the train would have been visible to Decedent when she was 50 feet from the crossing. (Doc. 39-15 at 420.) Therefore, summary judgment for Defendant on the issue of whether the crossing was ultra-hazardous is appropriate.

### F.    Negligence Per Se (doc. 1 at ¶¶ 25(b)-(g))

Defendant moves for summary judgment on six of Plaintiffs' negligence per se claims. Under Missouri law, the elements for negligence per se are:

> (1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury.

*Hente v. 21st Century Centennial Ins. Co.*, 467 S.W.3d 857, 864 (Mo. Ct. App. 2015) (citation omitted). Here, Defendant argues that Plaintiffs' negligence per se claims fail as a matter of law because Plaintiffs do not assert that Defendant violated a statute or regulation. Neither in Plaintiffs' Complaint nor in their opposition to the subject motion do Plaintiffs identify a statute or regulation violated by Defendant with respect to the negligence per se claims. In fact, Plaintiffs' opposition does not address Defendant's arguments with respect to these claims, and therefore, Plaintiffs are deemed to have abandoned these claims. Consequently, summary judgment for Defendant on these negligence per se claims is appropriate.

### G.    Damages for Pre-Death Pain and Suffering (doc. 1 at ¶ 16)

Defendant moves for summary judgment based on survival damages claiming that Plaintiffs cannot prove Decedent experienced pain and suffering between the time of impact and the time of her death. Defendant cites to the portion of the autopsy report (doc. 39-2) that notes, "it is likely that the impact rendered [Decedent] unconscious immediately." Defendant also states that Plaintiffs have not identified an expert who will testify that Decedent was conscious

post-collision or any fact witness who observed signs of consciousness post-collision. Defendant asks the Court for summary judgment relating to any claim for conscious or pre-death pain and suffering.

Plaintiffs argue that there is a genuine dispute of material fact as to whether Decedent experienced pain and suffering before her death and that they are entitled to damages for "pre-impact terror experienced by Decedent prior to the collision." In support of this argument, Plaintiffs cite the portion of the autopsy report (doc. 39-2) that states Decedent "would not have survived [sic] more than a very short time." Plaintiffs note that the report is not certain regarding when Decedent lost consciousness.

Here, Plaintiffs have not met their burden to show that Decedent experienced pain and suffering between the time of impact and the time of her death. *See Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (in resisting summary judgment, the non-moving party must submit "sufficient probative evidence that would permit a finding in their favor on more than mere speculation[.]"). A jury's finding in Plaintiffs' favor on this issue would be based on mere speculation. Additionally, irrespective of Plaintiffs' factual burden to show pre-impact terror, Plaintiffs neither allege this damage theory in their Complaint nor, to the Courts knowledge, did they disclose it at any earlier time; further, Plaintiffs have not cited any authority that would allow them to raise this damage theory for the first time at this late stage. Thus, Plaintiffs may not rely on this theory to resist summary judgment. Consequently, summary judgment for Defendant on any claim for pre-death pain and suffering and pre-impact terror is appropriate.

### H. Punitive Damages (doc. 1 at ¶ 23)

Defendant moves for summary judgment on Plaintiffs' claim for punitive damages arguing that the claims are not supported by the facts of this case.

In *Sharp v. Robberson*, 495 S.W.2d 394, 397 (Mo. 1973), the Missouri Supreme Court addressed the circumstances of when punitive damages were recoverable in a negligence action:

> Ordinarily [punitive] damages are not recoverable in actions for negligence, because negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional conduct. But an act or omission, though properly characterized as negligent, may manifest such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted.

*Id.* (quotations omitted). Later in *Alcorn*, the Missouri Supreme Court outlined factors that

weigh against submission of punitive damages claims:

> prior similar occurrences known to the defendant have been infrequent; the injurious event was unlikely to have occurred absent negligence on the part of someone other than the defendant; and, the defendant did not knowingly violate a statute, regulation, or clear industry standard designed to prevent the type of injury that occurred.

50 S.W. 3d at 248 (citing *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 160 (Mo. 2000) (overruled in part on other grounds)).

The factors cited in *Alcorn* weigh in favor of summary judgment on Plaintiffs' claims for punitive damages in this case. First, there was only one prior accident at this crossing, and it occurred in 1991. (Doc. 39-6 at 100.) Next, the video (Exhibit L to doc. 39) of the collision shows that Decedent violated Missouri's traffic regulations in entering the crossing at the time of the collision. MO. REV. STAT. § 304.035. Finally, Plaintiffs have not submitted evidence that Defendant knowingly violated a statute, regulation, or clear industry standard designed to prevent the type of injury that occurred. In fact, a number of the claims that Plaintiffs cite in their opposition have been resolved in Defendant's favor as set forth in this Order or the Court's Order on Defendant's other motion for summary judgement (doc. 36). Finally, the Court agrees with Defendant that the facts of this case do not reach the egregious facts of those in *Alcorn* where the Missouri Supreme Court determined that Plaintiffs failed to make a submissible case for punitive damages. Consequently, summary judgment for Defendant on Plaintiffs' claims for punitive damages is appropriate.

## IV. Conclusion

As set forth above, the Court concludes that Defendant's motion (doc. 38) is **GRANTED** in part and **DENIED** in part. The Court finds summary judgment for Defendant on Plaintiffs' negligence claims for failure to close the crossing; for failure to properly train, manage, and supervise its employees; for failure to keep a proper lookout and to slacken speed; the issue of whether the crossing was ultra-hazardous; six of Plaintiffs' negligence per se claims; Plaintiffs' damages claim for pre-death pain and suffering and pre-impact terror; and Plaintiffs' claim for punitive damages. Plaintiffs' negligence claims for failure to maintain the crossing withstand Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 14, 2017